■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY M. BUTTS, Appellant.—Mercure, J.

On March 31, 1986, two convenience stores in the Town of Cortland, Cortland County, were robbed. At one of the stores, Rose Hollenbeck, the store cashier on duty, put money into a bag when the perpetrator threatened her with a knife. In April 1986, two other Cortland area stores were held up. Defendant was indicted on charges of robbery in the first degree (two counts) and grand larceny in the third degree in connection with each of the robberies. Following trial, he was convicted of four counts of robbery in the first degree and sentenced to four consecutive terms of imprisonment of 12½ to 25 years. This appeal ensued.

The sole contention on appeal is that County Court erred during jury selection in denying defendant's challenges for cause of prospective jurors Laura Paddock, Marion Spence, Asad Isaf and Rayna King (see, CPL 270.20 [2]). Initially, we reject the People's contention that defendant is under an

affirmative duty to state on the record prior to the conclusion of jury selection that he has exhausted all of his peremptory challenges and is dissatisfied with the jury in order to preserve the issue for review. CPL 270.20 (2) requires only that defendant peremptorily challenge the subject juror and that his peremptory challenges be exhausted prior to the completion of jury selection. In our view, *People v Brown* (111 AD2d 248, 250), relied upon by the People, does not require a different result. Here, the People concede that defendant's peremptory challenges were exhausted and the record reflects that defendant utilized peremptory challenges to remove each of the subject jurors.

Defendant contends that Paddock had a state of mind that was likely to preclude her from rendering an impartial verdict based upon the evidence adduced at trial (CPL 270.20 [1] [b]). During voir dire, Paddock acknowledged that she had read newspaper accounts of the robberies and "it sounded as if [defendant] was guilty", although she did indicate to County Court that she thought she could still render an impartial verdict. Under renewed questioning from defense counsel, Paddock stated that the newspaper articles and her past concern for her husband's safety when he owned a store might influence her opinion. She also said that she would be willing to listen to defendant's "side of the story" and then form an opinion. After County Court explained the presumption of innocence, Paddock said she would not be prejudiced if defendant proved an alibi. She then acknowledged that it "could be" that she was thereby improperly placing the burden of proof on defendant and stated that she could render an impartial verdict.

Although "the trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve" *(People v Branch,* 46 NY2d 645, 651), the reviewing court should not set aside the trial court's finding unless error is manifest *(Irvin v Dowd,* 366 US 717, 723-724). Further, jurors need not be totally ignorant of the facts and issues involved; the mere existence of any preconceived notion as to guilt or innocence is insufficient to rebut the presumption of impartiality *(supra,* at 722-723). Only when it is shown that there is a substantial risk that the predisposition will affect the juror's ability to discharge her responsibilities is disqualification appropriate *(People v Williams,* 63 NY2d 882, 885). In our opinion, Paddock's statement that she would be able to render a fair and impartial verdict, in the context of the entire

testimony *(see, People v Biondo,* 41 NY2d 483, 485, *cert denied* 434 US 928; *People v Martell,* 138 NY 595, 599-600), offers sufficient support for County Court's finding that she did not have a state of mind likely to preclude her from rendering an impartial verdict.

The challenges of Spence, Isaf and King were based either upon a relationship with the prosecution, a victim or a witness of such nature that it was likely to preclude him or her from rendering an impartial verdict (CPL 270.20 [1] [c]) or upon the ground of prior service on a trial jury involving the same conduct as that charged in the indictment (CPL 270.20 [1] [e]). Spence bought a house from and accordingly knew the sister of the prosecutor, Cortland County District Attorney Richard Shay. She worked at a hospital at which Shay's father was chief of staff, although she did not know him. She had also served on a jury three years earlier in a case in which the defendant was convicted of larceny and was herself the victim of a burglary eight years prior to the trial. Isaf was familiar with Shay, but not as a close friend, and was personally familiar with three other attorneys in Shay's office. Further, Isaf's son was a police officer for the Town of Homer, Cortland County. King was a personal friend of Hollenbeck and had gone out with her socially. However, she had not spoken with her about the robbery or socialized with her in the nine months from the time of the crime until trial.

None of the alleged relationships were explored by defense counsel and shown to be anything more than permissible "nodding acquaintance[s]" *(see, People v Provenzano,* 50 NY2d 420, 425). Numerous cases have held that a juror's relationship with a police officer and even his position as a police officer are insufficient to constitute implied bias *(see, People v Colon,* 127 AD2d 678, *lv granted* 69 NY2d 1002; *People v Smith,* 110 AD2d 669, *revd on other grounds* 68 NY2d 737, *cert denied* 479 US 953). Similarly, no indication was given that the prior trial at which Spence served as a juror was sufficiently similar to the instant prosecution so as to present a likelihood of prejudice.

Judgment affirmed. Mahoney, P. J., Weiss, Yesawich, Jr., Harvey and Mercure, JJ., concur.